Good morning. My name is David Baker. I'm here on behalf of Commuter Rene Jackson. I would like to reserve two minutes for rebuttal, if I may. Yes. Yes, sir. Ms. Jackson purchased a condominium apartment in 2003. A few years later, she ran into financial difficulties, couldn't pay the mortgage, and ultimately was foreclosed. That foreclosure was unlawful. It was unlawful because, at the time, the foreclosing entity was not the mortgagee. A few years later, we had the Supreme Judicial Court's decision in Ibanez, which solidified the fact that the law requires the foreclosing entity to be the mortgagee. At the time, the statute did not require that the assignment of the mortgage to the foreclosing entity be on record. The statute now, in response to Ibanez, I believe, requires that the complete chain of title to mortgages be on record. In any event, a few years after the foreclosure, Ms. Jackson got a letter from Portnoy and Green saying that you have to either pay the mortgage or we're going to foreclose. This was a considerable surprise to her because she thought in 2008 they had done the foreclosure. She had moved out, hadn't she? By that point, the mortgagees had caught on to the fact that they don't have good title because they want the actual mortgagee even though they were the foreclosing entity. So they sent another foreclosure letter to the Portnoy and Green firm. The original 2008 foreclosure had been done by Harmon Law Offices. Harmon, of course, is very, very well known. It represents creditors and all sorts of different things, primarily bankruptcy cases and foreclosure actions. Once Ms. Jackson got wind of what was going on, she filed an action in the State Superior Court, then hired someone to help her with that State Superior Court action. The State Superior Court denied an injunction. Before that, she moved back in, didn't she? I believe that, yes. I believe she had moved back in by that point. The State Superior Court denied a preliminary injunction. Wait, but when she moved in, did she still have her key and she moved in or was it moved in by agreement? I don't know the exact details, but I do know that during the time from when she moved out to when she moved back in, no one had occupied the property. So it was ready and waiting for her, except that it needed some maintenance and repairs. Is she still there now? Pardon? Is she still there now? She's still there now. Okay. Right? So what she did after the preliminary injunction was denied, she commenced a new Chapter 13 bankruptcy case on her own. Again, with the assistance of an attorney, another attorney, she found that she realized that what she needed to do was to reopen the Chapter 7 bankruptcy case she had filed in the interim, and she disclosed this asset, which had not been on the original bankruptcy schedules because she thought it had been foreclosed. She had no reason to believe that she still owned anything. So that case was dismissed. I'm sorry, the first Chapter 13 bankruptcy case was dismissed. The previous Chapter 7 case was reopened, converted into Chapter 13, and an adversary proceeding commenced. A number of counts were asserted. The bankruptcy judge granted summary judgment in favor of Ms. Jackson on the basis of the wrongful foreclosure, so title was restored back to her. It went on from there to consider issues of the Fair Debt Collection Practices Act, Chapter 93A, that sort of thing. And, of course, the violation of the discharge injunction of the bankruptcy when she had gotten her Chapter 7 discharge. Ultimately, all of the counts other than the wrongful foreclosure and the violation of the discharge injunction were dismissed. We think that they were wrong for all the reasons I've given in our brief. Particularly, one point I want to mention is the Fair Debt Collection Practices Act, for example. There's a disarray, shall we say, in the case on whether foreclosure is a debt collection action. I suggest that it is because the whole point of foreclosing a mortgage is to collect the money due on the moment. I don't really understand how anything else could be that way. Ultimately, as I say, the bankruptcy court granted a small amount of damages for the discharge violation. We had asked for about $63,000 in damages, but the ultimate damage award was only about $9,000. What was the basis for that request? How did you compute the $63,000? We computed it by the cost she incurred to file the State Superior Court action, the copying, the court fees, the attorney she hired to assist her with that action, the time she lost from work. But more than that, the $62,000 also encompassed the other aspects related to the bankruptcy case. The bankruptcy judge seemed to think that she reopened the case simply to get back into her apartment. That's not an illogical suggestion. But the way the bankruptcy court calculated the damages was that it discounted all this business about the State Superior Court, the first bankruptcy case, and simply went it down, as I say, to about $9,000. That seems awfully grudging, shall we say, for someone who was disposed from their home illegally and was displaced for four years. What was the legal basis for claiming those other expenses as damages? What's your theory? Well, the theory is that they flow directly from the wrongful foreclosure. If it hadn't been a wrongful foreclosure, it wouldn't have sent her the second foreclosure notice. Are you saying there was a breach of contract? A breach of contract, yes. And is there something in the original contract which allows for recovery of those? Well, mortgages and promissory notes are adhesion contracts. They say what the bank wants them to say. That's not the question. Well, frankly, I don't know what it does, but I would really seriously doubt it because it is an adhesion contract. And I don't think a mortgage lender would put something on a promissory note of mortgage saying that if you have to sue us, you can collect your damages from us.  Good morning. Good morning. Connie Flores-Jones for Bank of America. May it please the Court. Bank of America's position is that Ms. Jackson waived all issues with regard to the bankruptcy court's dismissal of her claims against it  and did not address either the May 3, 2013 order or the July 11, 2013 order that dismissed her claims against Bank of America. We also have a move-out agreement that Ms. Jackson filed or executed, which is part of the record at ROA 57. If the Court has no questions, I will rest on the briefs. Thank you. Good morning. May it please the Court. Attorney Kurt McHugh for the Defendant Harm and Law Offices, PC. We echo the arguments made by Bank of America in regards to Ms. Jackson's failure to include the transcript of the July 11, 2013 hearing for the Bankruptcy Appeal Panel to review. We also agree that the 2009 move-out agreement that provided a full release for Bank of America and their attorneys relieves a harm of all claims. And again, we rest on our brief unless the Court has any questions. So the issue about the failure to include in the record the transcript of that July 11 hearing, even if there was an appeal to the district court, Bankruptcy Rule 8009 still requires that that be included in the record, whether it's an appeal to the district court or an appeal to the BAP. Is that right? I think it might be. I'm not familiar with that rule, but it sounds right. My apologies. Well, so the argument, as I take it, is that because we have de novo review and we're reviewing the order of the bankruptcy court itself, as opposed to the order of the Bankruptcy Appellate Panel, that there's no need to include the record in an appeal to the Bankruptcy Appellate Panel. So my point was simply that the rule applies both to the Appellate Panel and to the district court. It doesn't matter where you take the appeal to. But there is no direct appeal to this court. So the argument that because we are going to be reviewing the bankruptcy court's order itself, as opposed to the Bankruptcy Appellate Panel, seems to me to get to a different issue. That is, what do we need to look at? But really, this is just a question of preserving the issue, isn't it? Correct. I'd also say that a lot of the arguments were waived in the appeal as well, just because they weren't raised. The appeal here? Correct. Or the appeal in front of the Bankruptcy Appellate Panel? The appeal here. Okay. All right. Thank you. Good morning, Chief Judge Howard. May it please the Court. My name is David Hemelfarb. I represent Capital One, N.A., which is the successor by merger to ING Bank, FSB. Not being a frequent flyer in front of this Court, I was tempted to rest on my briefs, but I do have four quick points I would like to make. A lot of the arguments in the brief were addressed to Capital One and to certain post-trial organizations. But I do have a couple of points I would like to make. The first issue in Ms. Jackson's brief that she challenges, however, was the Court's grant of summary judgment on Count 6 of Jackson's First Amended Complaint. There's a lot of confusion in Ms. Jackson's brief because when she talks about Count 6, almost all of her briefing has to do with what she perceives were slights that she suffered in connection with the 2008 foreclosure. So I just wanted to stress it's important to note that Count 6, if you look at it very clearly, is a count saying wrongful foreclosure in connection with the 2012 foreclosure. And what's interesting about that count is there was no foreclosure in 2012, as Attorney Baker explained. There were notices sent of an intent to foreclose, and then Ms. Jackson reopened her previous Chapter 7 case, which was converted to Chapter 13, the automatic stay went into effect. So the foreclosure was stayed, and there was no foreclosure. Her claim in Count 6 is that she didn't get the required notices under her mortgage, and she didn't get the required notices under Chapter 244, Section 35A. Now, at this point, here we are in 2018, that foreclosure never went forward. If there's going to be a foreclosure in the future, I don't know. It has to do with whether there's a Chapter 13 plan confirmed, where her payments are at. There's no question that those notices would have to be resent. So the issue as to whether the notices that were sent back in 2012 were valid are purely academic. Those notices are never going to result in a foreclosure going forward. So that's the first point, is a lot of the arguments in the briefing addressed something that had nothing to do with the 2012 foreclosure. The other point is that Ms. Jackson, in her brief, did not address the actual reason why Summer Judgment entered on Count 6, which is that she did not come forward with any evidence of damages. And it makes sense. If somebody initiates a foreclosure, somebody files for bankruptcy, the foreclosure stayed. The question is, what damages did that person incur? And so we argued that on Summer Judgment. And at that point, Ms. Jackson would have had the opportunity to come forward with affidavits, documents, evidence, saying, these are my damages and here's why they're recoverable, etc., etc. She instead made the decision to come forward with no evidence. At one point, she made the comment, which I think both the Bankruptcy Court and the BAP identified, where she said, well, my damages are manifest on the record. I don't know what that means, but at the end of the day, I don't think it could be said that the judge committed error, saying somebody cannot go forward with a claim and it's proper to grant Summer Judgment on a claim if they can't prove one of the elements of their claim, which is that they suffered any legally recoverable damage. So that was the issue on Count 6. The next issue, which is, pardon the expression, but the road to hell is paved with good intentions, Capital One's claim originally did include costs that occurred during what the courts below referred to as the vacancy period, where Ms. Jackson was out. We looked at that and we said, you know what, it is fair and just to take those costs out. We're not going to charge them. We're going to take them out of our proof of claim. We tried to amend our proof of claim to take those out. Ms. Jackson objected. Judge Hoffman allowed her objection and said that issue will be dealt with in the adversary proceeding. During the adversary proceeding, Ms. Jackson came forward with absolutely no evidence or argument as to why the reductions that we had made were in any way improper, whether that our math was wrong, whether the LIBOR rate that we relied on to do the calculation was wrong. She made none of those arguments. She focused all of her time, effort, and energy arguing that the principal amount was wrong. Now, that's a subtle distinction, but it's an important one because if you go through the record, there is numerous colloquies. I had one that I can read from the transcript with the court where I stressed, Ms. Jackson didn't object originally to the principal balance that Capital One claimed in its proof of claim. So that amount was deemed presumptively valid. She made other objections and the judge ruled on some of them and the judge overruled other ones. The judge then, or Judge Hoffman, subsequently said the only issue that I'm going to decide in the adversary proceeding is the amount of the reduction due to the vacancy period. And I had a colloquy with Judge Hoffman after Mr. Baker rested. I said, Your Honor, I don't think I have any questions of Ms. Jackson, but I just want to confirm that the issue of the principal balance is not before the court. And the judge said, That is my understanding. And I'm referring to, if you want to make a note, it's for Capital One Supplemental Appendix 401, excuse me, 402. So at the end I said, It's my understanding that the principal balance figure is not part of that equation. Although if the court has a different view of that, I'd appreciate knowing so that I could perhaps ask one or two questions of her, Ms. Jackson, on the issue. The court responded, I agree with your assessment of the situation, Mr. Himelfarb. The reason why that's important is that this issue of attacking the principal balance, which was never before the court because Ms. Jackson did not object to Capital One's proof of claim, us to that issue, was therefore not preserved for appeal because she did not raise any argument that the court's original decision saying that that was not an issue, that was before the court, is not an issue that she addresses at all in her appellate briefing. Just a quick question. Did she ever seek to have credited to the loan balance rent that she incurred while she was dispossessed? She never came forward with any evidence that she was paying this amount of rent. I did see some reference somewhere that she was paying her boyfriend a certain amount of rent, but she didn't come forward with any evidence for the amount of rent that she incurred during the time she was dispossessed. But remember, that wouldn't necessarily be damages to her because she isn't paying anything on the condominium that she's at at that time. She isn't paying any interest payments on that. So if she had been living in her condominium, she would have had to have been making those payments. If her rent somewhere else was less, then I don't imagine that's damages. But most importantly, that wasn't evidence she came forward with at trial and said, I had to incur these costs. So there's no argument in any of the appellate briefing, and that's not an issue that Ms. Jackson has ever raised, that that's something that she's entitled to recover. There's nothing else. Thank you, Your Honors. Thank you. I would like to address two points that my colleagues here raised. Firstly, Ms. Forrest referred to this move-out agreement. One of our issues in the litigation was the fact that this was the product of at least a mutual mistake. Both Harmon Law Office and its adjudicator, its client, and Ms. Jackson, thought that the foreclosing entity had the right to foreclose. And that was a specific provision in the move-out agreement. We have the right to foreclose. And it was, as I say, at least a mutual mistake. Personally, I think that Harmon Law Office and any foreclosing firm ought to know the law. They ought to know that the foreclosing entity must be the mortgagee. I think the first case that made that point was Henry Schwartz, the Bankruptcy Court decision from Judge Rosenthal, which the Supreme Judicial Court cited, in fact. You're talking about the 2008 foreclosure at this point? That's correct.  That I don't remember. Later. It came after that, yes. And it was expressly made not retroactive? That's correct. And that's part of my point. I don't understand what your point is, because if that decision hadn't been made, how could it be required to comply with it? Exactly. I'm sorry, you're going the other way around. Yes, I am. The law was clear. In fact, Justice Cordia in his concurrence said the only thing surprising about the law that was set forth in Ibanez is how sloppy the banks and mortgagees were in protecting their assets. Ibanez didn't change the law. It was always the law. May I continue? If you have one final point that you're trying to make. Yes. Mr. Himmelfarb made reference to the issue of damages. One of our issues was that after trial, Mr. Himmelfarb attached to his post-trial brief a number of exhibits that had never been introduced at trial. In fact, Mr. Himmelfarb called no witnesses, as he said, did not cross-examine Ms. Jackson. So we asked that the exhibits attached to the brief be stricken, but Judge Hoffman denied that. We think that was prejudicial error because we have no way of knowing whether those exhibits were correct. Thank you.